IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

Anthony Boyd, AIS# Z-578
Plaintiff, pro se

v.

Governor Kay Ivey, in her official capacity,
Attorney General Steve Marshall, in his official capacity,
Defendants.

Case No. 2:25-cv-00764-ECM

---

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

INTRODUCTION

Defendants' brief never denies the central fact: Anthony Boyd's execution date was set by the Governor, not by a court. Instead, they attempt to avoid review through technical arguments, sovereign-immunity labels, and accusations of delay. But Boyd acted promptly and diligently: he filed his state mandamus petition within seven days of the Governor's action, and then filed here thirteen days after the Alabama Supreme Court denied relief.

Defendants call that "gamesmanship." But in other capital cases, Alabama has consistently argued the opposite—that prisoners must exhaust state remedies before seeking federal relief. Boyd followed that rule. He cannot be faulted for doing exactly what the State usually demands.

This Court must not permit an unlawful execution to go forward when the State refuses to deny—because it cannot—that the Governor assumed a judicial power contrary to statute, state constitution, and federal due process.

---

I. TIMELINESS

Defendants say Boyd's claim accrued when Rule 8(d)(1) was amended in January 2023. That is wrong. The claim accrued when the Governor actually set Boyd's execution timeframe on August 18, 2025. See McNair v. Allen, 515 F.3d 1168, 1173 (11th Cir. 2008) (claim accrues when plaintiff knew or should have known of the injury). Until then, Boyd had no ripe injury.

He filed his mandamus petition on August 25, 2025, and filed this action on September 23, 2025—just thirteen days after the Alabama Supreme Court denied relief. This timeline demonstrates diligence, not delay.

The cases Defendants cite (Hill v. McDonough, Woods v. Comm'r, ADOC, Bucklew v. Precythe) all involved inmates who sat on claims for years until the eve of execution. Boyd filed as soon as his claim ripened and after exhausting state remedies. Those cases are irrelevant.

---

## II. EXHAUSTION SHOWS DILIGENCE, NOT GAMESMANSHIP

Defendants portray Boyd's mandamus petition as irrelevant. In reality, it shows he did exactly what Alabama usually insists capital prisoners must do: present the claim to state court first.

Alabama has frequently argued that failure to exhaust state remedies bars federal review. See, e.g.:

Arthur v. Thomas, 739 F.3d 611, 623 (11th Cir. 2014) (rejecting § 1983 challenge to execution method for failure to exhaust state remedies);
Williams v. Allen, 496 F.3d 1210, 1216 (11th Cir. 2007) (Alabama argued claim barred because petitioner failed to exhaust in state court);
Callahan v. Campbell, 427 F.3d 897, 923 (11th Cir. 2005) (State emphasized that federal habeas review is unavailable until state remedies are exhausted).

The Supreme Court itself has underscored this rule in capital cases. See O'Sullivan v. Boerckel, 526 U.S. 838, 844–45 (1999).

Boyd complied: he presented his claim to the Alabama Supreme Court by mandamus. Relief was denied on September 10, 2025. He filed here thirteen days later. This is not gamesmanship—it is precisely the exhaustion sequence Alabama normally demands.

—

## II. SOVEREIGN IMMUNITY DOES NOT BAR THIS ACTION

Defendants argue sovereign immunity bars Boyd's claim because it "sounds in state law." That misstates the nature of the claim. Boyd does not simply seek to enforce Alabama law—he

seeks to stop an ongoing violation of the Fourteenth Amendment: his execution date was set by an official with no lawful authority to do so, depriving him of liberty without due process.

The United States Supreme Court has long recognized that official-capacity suits for prospective relief against state officials are not barred by the Eleventh Amendment. In Ex parte Young, 209 U.S. 123 (1908), the Court explained:

"The use of the name of the State to enforce an unconstitutional act to the injury of complainants is a proceeding without the authority of, and one which does not affect, the State in its sovereign or governmental capacity. It is simply an illegal act upon the part of a state official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional." Id. at 159–60.

That is exactly what has occurred here. The Governor, at the request of the Attorney General, acted under color of state law to exercise a judicial function expressly denied to her by statute and constitution. The ongoing enforcement of this unlawful execution warrant falls squarely within the Young doctrine: it is an illegal act by state officials, not a legitimate exercise of sovereign authority.

The Eleventh Circuit has repeatedly affirmed this principle: suits for prospective relief against state officials are permitted where the plaintiff alleges an ongoing violation of federal law. Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988); Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999). Boyd challenges precisely such an ongoing violation—the State's plan to execute him under an unconstitutional procedure.

Defendants' reliance on Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984), is misplaced. Pennhurst bars federal courts from ordering state officials to comply with state law in the abstract. Boyd does not seek that. He seeks to prevent state officials from carrying out an execution in violation of the federal Constitution. The Fourteenth Amendment requires states to honor their own procedures when life is at stake. By stripping the courts of their statutory role and transferring it to the executive, Alabama created a process that violates federal due process. To invoke Pennhurst here is itself a form of gamesmanship. It is the State—not Plaintiff—that re-wrote its procedures to evade statutory safeguards, and now seeks to hide behind Pennhurst to shield an ongoing constitutional violation.

Both the Governor and Attorney General are properly named under Young. The Governor directly sets the execution window in violation of statute and the Alabama Constitution, while also holding the sole clemency power, creating a structural conflict of interest. The Attorney General, meanwhile, has the statutory duty to defend criminal convictions, moves courts to set execution dates, and now defends the unconstitutional procedure at issue. This is not an attempt to hold the State itself liable; it is a proper action against state officers responsible for enforcing an unconstitutional process. See Grizzle v. Kemp, 634 F.3d 1314, 1319 (11th Cir. 2011).

Nor can Defendants plausibly deny the stakes. They astonishingly assert that "Boyd's execution, on its own, cannot be deemed an irreparable harm." That claim trivializes the most fundamental truth: death is the ultimate irreparable injury. Once carried out, no later ruling can restore life or cure the deprivation of due process. For the State to argue otherwise only underscores the necessity of this Court's intervention.

The Eleventh Amendment is not a license for Alabama officials to extinguish life through an unlawful procedure. To accept Defendants' position would be to nullify Ex parte Young at the very moment when its protections are most vital—where the unconstitutional act is ongoing, the loss of life is imminent, and no state remedy remains. This Court's equitable power exists precisely to prevent such a result

Defendants may attempt to rely on Dreyer v. Illinois, 187 U.S. 71 (1902), for the proposition that federal courts cannot intervene merely because a State departs from its own statutory scheme. But Dreyer is inapposite. Boyd is not asking this Court to supervise routine compliance with state law. Rather, Alabama's departure from its statutory process implicates a federal liberty interest: the Fourteenth Amendment's guarantee that life may not be taken except by due process of law. The Supreme Court has since made clear that state-created procedures can give rise to protected liberty interests enforceable in federal court. See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (recognizing due process violation where a defendant was denied the benefit of state law sentencing procedures). The claim here is of the same kind: Alabama stripped Boyd of the legislatively guaranteed protection that a court, not an executive official, would set his execution date. That violation transcends state law and falls squarely within federal due process protections. Accordingly, Dreyer does not bar this Court's review.

Accordingly, this Court has full jurisdiction under Ex parte Young to enjoin Defendants from carrying out Plaintiff's execution pursuant to this unlawful procedure.

## IV. MERITS

Defendants repeatedly assert that the Governor's task under amended Rule 8(d)(1) is "merely" to calendar a date after the Alabama Supreme Court authorizes an execution. That characterization is both inaccurate and constitutionally dangerous. The Governor's power under the rule is not mechanical. Even introducing this new word, calendaring to the process is an attempt to distract from the fact that the Governor sets the date. She does not simply flip a switch once the Court has spoken. She decides the precise timeframe in which death will occur, which can extend across multiple days, and she retains sole discretion to grant or deny clemency within that same window. At the same time, the executive branch—through the Attorney General—is the very party that prosecutes capital defendants, defends convictions and sentences on appeal, and then appears before this Court to resist all efforts at judicial review. The effect is that one branch now controls prosecution, defense of judgment, calendaring of execution, and the final clemency decision.

This collapse of powers is not "ministerial" at all. It represents an impermissible fusion of functions that the Constitution forbids. As the Supreme Court has warned, due process requires procedures that minimize the risk of arbitrary deprivations of life. By allowing the executive branch to wield unchecked authority over every stage of a capital case, Alabama's new rule invites exactly the sort of arbitrariness the Fourteenth Amendment prohibits. Far from being harmless, the Governor's role is the very keystone of an unconstitutional structure that denies Plaintiff the fair process guaranteed by the Constitution.

The Governor's role is not "ministerial." She chooses when within the warrant window Boyd will be executed—discretion that the Legislature vested in the courts. Transferring that discretion to the executive violates both Ala. Const. art. III, § 43 and the Fourteenth Amendment.

The conflict-of-interest is structural: the same official who sets the execution date is the one with sole clemency power. The State dismisses this as speculative, but structural conflicts are recognized as undermining due process. See Tumey v. Ohio, 273 U.S. 510 (1927) (due process violated when same official has conflicting roles in adjudication).

## V. BALANCE OF EQUITIES AND PUBLIC INTEREST

Defendants argue that equity disfavors relief because Plaintiff filed "too late" and because of the victims' interest in finality. That argument misstates both the facts and the law.

1. Plaintiff did not delay — he acted diligently.
Plaintiff pursued a mandamus petition in the Alabama Supreme Court immediately after the Governor set his execution timeframe. That petition was denied on September 10, 2025, and he filed this federal action on September 23, 2025—a span of only 13 days. The State's suggestion of manipulation ignores the reality of prison mail delays and the fact that Plaintiff is pro se. Federal courts consistently recognize that a condemned prisoner must first exhaust state remedies before turning to federal court. The State cannot insist on exhaustion in some contexts and then disparage Plaintiff as "dilatory" for doing exactly what the law requires. See O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

2. The cases the State cites are irrelevant.
Defendants rely on cases like Hill v. McDonough, 547 U.S. 573 (2006), and Bucklew v. Precythe, 587 U.S. 119 (2019), which caution against method-of-execution challenges filed only when execution is imminent. But those cases involved prisoners who had long known the basis for their claims and deliberately waited until the eve of execution. Boyd's situation is entirely different. His claim did not even exist until the Governor actually set his execution timeframe in August 2025. Until then, there was no concrete injury to challenge. The claim accrued on that date, and he pursued state and then federal remedies immediately.

3. Federal courts grant relief even when timing is close to execution.

The Supreme Court and federal courts of appeals have repeatedly recognized that last-minute relief is appropriate when a serious constitutional question is raised. See Dunn v. Ray, 586 U.S. 119 (2019) (Kagan, J., dissenting) (criticizing refusal to stay execution where claim was brought promptly after accrual); Arthur v. Dunn, 580 U.S. 1104 (2017) (Sotomayor, J., dissenting from denial of stay, noting that courts should not elevate timing over legality in capital cases); In re Ohio Execution Protocol Litig., 860 F.3d 881, 885 (6th Cir. 2017) (granting preliminary injunction where method-of-execution claim was timely brought even close to execution). The Eleventh Circuit itself has acknowledged that "[d]eath is different," requiring heightened consideration even in the face of timing concerns. Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1301 (11th Cir. 2016).

4. Finality does not override legality.

Defendants emphasize "finality" and the passage of time since the crime. But finality cannot justify an unlawful execution. The Supreme Court has repeatedly held that capital punishment must be administered with strict adherence to law and constitutional guarantees. See Ford v. Wainwright, 477 U.S. 399, 411 (1986) ("Execution is the most irremediable and unfathomable of penalties; when it occurs, it cannot be undone."); Panetti v. Quarterman, 551 U.S. 930, 946 (2007) (states must follow lawful procedures in capital cases).

5. The equities and public interest weigh entirely in Plaintiff's favor.

The State suffers only a delay in carrying out its sentence. By contrast, Plaintiff faces the permanent and irreparable loss of life pursuant to an unconstitutional procedure. No later remedy could correct such a violation. The public interest lies not in speed, but in ensuring that executions, when they occur, are carried out lawfully, in compliance with both state statutes and the federal Constitution. A government that disregards its own procedures in the most serious cases undermines the legitimacy of the rule of law.

## VI. THE STATE'S ARGUMENTS IN CONTEXT

Defendants fill pages discussing Boyd's other litigation, none of which is before this Court. That is irrelevant and prejudicial. This case concerns one issue only: whether the Governor lawfully set Boyd's execution date. Bringing in unrelated filings is bad-faith gamesmanship meant to distract from the core violation.

Defendants also mock Boyd for "returning to federal court." Of course he did—after the Alabama Supreme Court refused relief. Federal court is the only forum left. That is not manipulation; it is exactly how the dual system of review is supposed to work.

Defendants also raise the Prison Litigation Reform Act as though Plaintiff were asking this Court to exceed its authority under that statute. That is pure misdirection. Plaintiff has not requested anything beyond the scope of the PLRA—he seeks only prospective injunctive relief preventing an unconstitutional execution. The PLRA expressly permits such relief where it is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the

least intrusive means necessary." 18 U.S.C. § 3626(a)(1)(A). An injunction preventing an execution carried out under an unlawful procedure fits squarely within that standard. To invoke the PLRA here, as if Plaintiff were attempting to micromanage prison conditions, is nothing more than a distraction and underscores the weakness of Defendants' substantive position.

Defendants' reliance on Myers is misplaced. In that case, the Governor never actually exercised the challenged authority to set an execution date, and thus the issue was never squarely presented or decided. Courts have consistently declined to resolve hypothetical constitutional questions where the alleged injury has not materialized. See, e.g., Texas v. United States, 523 U.S. 296, 300 (1998) (federal courts do not render advisory opinions on speculative disputes). By contrast, in Boyd's case the Governor has, in fact, exercised that authority, and his execution has been scheduled for October 23, 2025 by executive action alone. The distinction is dispositive: what was hypothetical in Myers is now a concrete deprivation of liberty, and the constitutional defect cannot be ignored. Accordingly, Myers provides no support for Defendants here.

## VII. THE STATE'S OWN PROCEDURAL VIOLATIONS MAKE FEDERAL REVIEW ESSENTIAL

Defendants accuse Boyd of "gamesmanship" and of bypassing available state remedies. That accusation collapses under the facts. On August 20, 2025, the Talladega Circuit Court summarily dismissed Boyd's third Rule 32 petition. But the court and clerk never notified Boyd of that order. He only discovered it weeks later—when the State itself cited the dismissal in this very litigation. By then, the 42-day appeal window had expired.

This failure was not Boyd's doing. It was a breakdown in the State's own procedures that denied him notice and deprived him of his right to appeal. The Alabama Rules expressly contemplate relief when a party does not receive notice of judgment. See Ala. R. App. P. 4(b)(6). Yet no such relief was afforded to Boyd. The State now attempts to weaponize that deprivation by claiming he failed to pursue state remedies. That is both factually false and constitutionally intolerable.

Federal courts have long recognized that when a state's procedural machinery itself cuts off review, the prisoner cannot be faulted. See Murray v. Carrier, 477 U.S. 478, 488 (1986) (cause for procedural default exists where "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). A petitioner who never received notice of a judgment suffers precisely such an external impediment.

Thus, the State's narrative of delay is inverted: Boyd did not obstruct review—Alabama's own failure to notify him obstructed it. That breakdown makes federal review not only appropriate but essential. To hold otherwise would allow the State to insulate unlawful actions from scrutiny by simply failing to notify condemned prisoners of adverse rulings until their appeal deadlines have expired.

—

## VIII. CONCLUSION

Defendants never deny the central fact: the Governor, at the Attorney General's request, assumed a judicial power she does not have, and in doing so set the date for Plaintiff's execution. That act exceeds constitutional authority, violates the separation of powers, and deprives Plaintiff of the due process guaranteed by the Fourteenth Amendment.

The State attempts to hide behind sovereign immunity and Pennhurst, but Ex parte Young, 209 U.S. 123 (1908), makes clear that this Court has both the jurisdiction and the duty to restrain ongoing unconstitutional acts by state officials. The State also tries to distract with accusations of delay, yet the record shows Plaintiff acted diligently—filing this action just thirteen days after the Alabama Supreme Court denied his mandamus petition. He did so pro se, under prison mail delays, after exhausting state remedies exactly as the law requires.

Death is final. The State suffers only delay; Plaintiff faces the irreversible loss of life through an unlawful process. The public has no interest in unlawful executions, and this Court's intervention is the only way to preserve the rule of law in the administration of the most severe penalty our system permits.

The core concept of the rule of law underlies due process, requiring that governmental processes be fair and that established rules be followed. When a state disregards its own structural safeguards—such as its separation of powers—it undermines that fundamental fairness and violates the very rule of law that gives legitimacy to its authority to impose the ultimate punishment.

For these reasons, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss, grant his motion for preliminary injunction, and stay his execution scheduled for October 23, 2025.

Respectfully submitted,

*/s/ Anthony Boyd*

Anthony Boyd, Pro Se
AIS# Z-578
Holman Correctional Facility
866 Ross Road
Atmore, AL 36502

CERTIFICATE OF SERVICE

I certify that on October 6, 2025, I mailed a copy of the foregoing Motion for Preliminary Injunction and Stay of Execution first-class postage prepaid, addressed to:

Office of the Governor
State Capitol
600 Dexter Avenue
Montgomery, AL 36130

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130

_____

**Extremely Urgent**

**CLEARED**

Apply shipping documents on this side.

Visit UPS.com

This envelope is for use with the f...

Do not use this envelope for:
- UPS Next Day Air®
- UPS Worldwide Express®
- UPS 2nd Day Air®
- UPS Worldwide Expedited®
- UPS Ground
- UPS Standard
- UPS 3 Day Select®

**Domestic Shipments**
To qualify for the letter rate, UPS Express® envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express envelopes containing items other than those listed or weighing more than 8 oz. will be billed by weight.

**International Shipments**
The UPS Express envelope may be used only for documents of no commercial value. Certain countries consider electronic media as documents. Visit ups.com/importexport to verify if your shipment is classified as a document. To qualify for the letter rate, the UPS Express envelope must weigh 8 oz. or less. UPS Express envelopes weighing more than 8 oz. will be billed by weight.

**Note:** UPS Express envelopes are not recommended for shipments of electronic media containing sensitive personal information or breakable items. Do not send cash or cash equivalent.

---

HOLMAN UNIT L-49
(256) 499-1399
THE UPS STORE #3330
1414 GOLDEN SPRINGS RD
ANNISTON AL 36207-6924

0.3 LBS LTR
SHP WT: LTR
DATE: 06 OCT 2025

SHIP CLERK OF COURT B-110
TO: 1 CHURCH ST

MONTGOMERY AL 36104-4018

AL 360 9-02

UPS NEXT DAY AIR
TRACKING #: 1Z 365 R2E 01 4020 1732    1

BILLING: P/P

REF #1: DS

Serving you for more than 110 years
United Parcel Service®

For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com