IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Appeal No. 25-13573-B
(Anthony Boyd v. Governor of Alabama)
On Appeal from the United States District Court for the Middle District of Alabama
Case No. 2:25-cv-00764-ECM

---

**ANTHONY BOYD,** AIS # Z-578,
    Plaintiff–Appellant, pro se,

v.

**GOVERNOR KAY IVEY,** in her official capacity,
**ATTORNEY GENERAL STEVE MARSHALL,** in his official capacity,
    Defendants–Appellees.

EMERGENCY MOTION FOR STAY OF EXECUTION PENDING APPEAL

COMES NOW, Anthony Boyd, Plaintiff–Appellant, appearing pro se, and respectfully moves this Honorable Court for a stay of execution pending appeal of the district court's denial of his § 1983 complaint and motion for preliminary injunction.

Plaintiff's execution is currently scheduled for October 23, 2025, under a warrant unlawfully issued pursuant to a procedure that violates the Fourteenth Amendment's guarantee of due process and the structural separation of powers embodied in both the Alabama and United States Constitutions.

---

I. INTRODUCTION

This case presents a question of exceptional constitutional importance:
whether the executive branch of Alabama may lawfully assume the judicial power to set execution dates.

In 2023, the Alabama Supreme Court adopted a new procedure—without legislative authorization—permitting the Governor to fix execution "time frames." Under this scheme, the Governor, at the request of the Attorney General, sets the dates of death for condemned

prisoners, despite clear statutory language reserving that function to the courts. Ala. Code § 15-18-82(a).

Plaintiff Boyd's execution date was set by Governor Kay Ivey under this procedure, not by any court. That act was an unconstitutional usurpation of judicial power and a direct violation of due process. Once the State acts without lawful authority, all subsequent acts are void.

---

## II. COUNSEL'S REFUSAL AND THE NECESSITY OF PRO SE ACTION

Plaintiff is represented by counsel in a separate § 1983 action concerning Alabama's nitrogen hypoxia method of execution. Those attorneys, however, refused to file or include this structural constitutional challenge—despite Plaintiff's repeated requests—on the grounds that it "did not fit" within the scope of the method-of-execution litigation.

As a result, Plaintiff was left with no option but to act pro se to preserve this distinct and urgent constitutional claim. His life now hangs in the balance because of an executive action that no court has ever reviewed for constitutionality.

This Court has repeatedly held that pro se filings are to be "liberally construed, particularly where life or liberty are at stake." Haines v. Kerner, 404 U.S. 519, 520 (1972). The failure of appointed counsel to raise this fundamental structural claim cannot be used to forfeit the right to meaningful judicial review.

---

## III. STANDARD FOR STAY PENDING APPEAL

A stay pending appeal is warranted when (1) the movant has a substantial likelihood of success on the merits; (2) he will suffer irreparable harm without a stay; (3) the balance of equities favors relief; and (4) a stay serves the public interest. Nken v. Holder, 556 U.S. 418, 434 (2009). All four factors strongly favor Boyd.

---

## IV. ARGUMENT

### A. Likelihood of Success on the Merits

This appeal raises a question of first impression concerning Alabama's separation of powers and its intersection with federal due process.

1. Violation of Statutory and Constitutional Authority

2

Alabama Code § 15-18-82(a) provides that "the court shall ... set the date of execution." The statute is unambiguous. Yet, by judicially rewriting Rule 8(d)(1), the Alabama Supreme Court reassigned this judicial duty to the Governor. That action violated Article III, § 43 of the Alabama Constitution, which explicitly forbids the executive from exercising judicial powers. See McInnish v. Riley, 925 So. 2d 174, 178 (Ala. 2005); Ex parte Jenkins, 723 So. 2d 649, 654 (Ala. 1998).

By acting under that rule, Governor Ivey and Attorney General Marshall executed an unlawful procedure. The State cannot rely on procedural defenses to preserve an act it had no lawful power to perform.

2. Ongoing Violation of Federal Law under Ex parte Young

This case falls squarely within the Ex parte Young exception to sovereign immunity. 209 U.S. 123, 159-60 (1908). The Governor's and Attorney General's ongoing enforcement of an unconstitutional execution procedure is "simply an illegal act upon the part of a state official" and not a legitimate exercise of state sovereignty. See also Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988); Summit Med. Assocs. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999).

The district court's reliance on Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984), was misplaced. Boyd does not ask this Court to enforce state law; he asks it to prevent state officials from violating the federal Constitution by acting outside their lawful authority.

3. Systemic Structural Harm

This is not a case about the method of execution—it is about the State's constitutional power to act at all. When the same executive officials responsible for defending convictions are also tasked with setting the date of death and deciding clemency, the separation of powers collapses. That structural failure offends the basic rule of law and guarantees of impartial process that due process demands. See Bond v. United States, 564 U.S. 211, 223 (2011).

The Supreme Court has repeatedly emphasized that separation of powers is a fundamental structural safeguard against arbitrary government action. See INS v. Chadha, 462 U.S. 919, 951–52 (1983) ("The separation and equilibration of powers ... protects individual liberty by ensuring that the Congress, the President, and the courts act within their respective spheres"). By allowing the executive to exercise judicial authority in setting execution dates, Alabama has undermined this safeguard, creating a systemic structural defect that threatens the liberty and life of Plaintiff and all condemned prisoners.

As the Supreme Court has made clear, "the Framers regarded the separation of powers as a vital safeguard of liberty," not merely a matter of institutional convenience. Boumediene v. Bush, 553 U.S. 723, 742 (2008); see also Bond v. United States, 564 U.S. 211, 222–23 (2011) (structural limits "protect the individual as well as the separate branches").

The Supreme Court has emphasized that the separation of powers is "a structural protection of liberty," not a mere formalism. Boumediene v. Bush, 553 U.S. 723, 742 (2008). When those structural boundaries are breached, the resulting acts are jurisdictionally defective and void, for "liberty requires that the three great departments of power be separate and distinct." Morrison v. Olson, 487 U.S. 654, 693 (1988).

B. Irreparable Harm

Execution is the ultimate, irreparable injury. Once carried out, the deprivation is final. See Barefoot v. Estelle, 463 U.S. 880, 893 (1983). A stay is necessary to prevent an irreversible constitutional wrong.

C. Balance of Equities and Public Interest

The State has no legitimate interest in carrying out an unlawful execution. The public interest lies in ensuring that the gravest exercise of state power—taking a human life—is done within constitutional bounds. Simply put, granting a stay would cause little or no prejudice to the State but would ensure that Alabama corrects a serious constitutional defect before proceeding with any execution. A short delay serves the interests of justice and the integrity of the rule of law. The State gains nothing by rushing an unlawful execution; it benefits all parties to resolve this structural error now rather than risk an irreversible violation later. The State's invocation of "delay" is misplaced; Boyd acted promptly after exhausting his state remedies, and any delay is attributable to mail and service delays outside his control.

---

V. REBUTTAL TO THE DISTRICT COURT'S REASONING

The district court erred in three respects:

1. Timeliness: The cause of action accrued only when the Governor actually set the date of execution. Prior to that, the claim was hypothetical. Moreover, because the Governor's continuing authority to set execution dates under this unconstitutional framework remains in effect, the violation is ongoing. The continuing-violation doctrine therefore applies: each enforcement of this procedure constitutes a new constitutional injury. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 380 (1982) (where a practice "continues into the present," limitations do not bar relief); Knight v. Columbus, Ga., 19 F.3d 579, 580 (11th Cir. 1994) (each injury constitutes a new violation). The district court erred in treating this as a past event with a fixed accrual date. The constitutional injury arose when the Governor, at the Attorney General's request, set Boyd's execution date pursuant to an unlawful transfer of judicial power. That act marked the first concrete application of a structural defect that remains in force today. The rule change enabling the executive to fix execution dates continues to operate as an ongoing and unconstitutional usurpation of judicial authority-a jurisdictional violation that renders every

4

resulting execution warrant void. See Ex parte Siebold, 100 U.S. 371, 376-77 (1879) ("An unconstitutional law is void, and is as no law."); Ex parte Young, 209 U.S. 123, 159-60 (1908). This continuing defect perpetually places Boyd under the authority of an invalid process. His injury is therefore both immediate and ongoing. To allow this unconstitutional and jurisdictional breach of the separation of powers to persist unchecked would be a grave miscarriage of justice and a direct affront to the rule of law.

2. Sovereign Immunity: The Ex parte Young doctrine plainly allows prospective injunctive relief against state officials enforcing unconstitutional laws.

3. Equitable Delay: Citing "last-minute litigation" precedent like Hill v. McDonough ignores the nature of this challenge—it is not about the method or timing of execution but about the State's power to act at all. Death, unlike delay, cannot be undone.

The district court's order effectively insulates an unconstitutional executive act from review, contrary to the most basic principle of judicial oversight.

---

VI. CONCLUSION

Plaintiff Boyd does not seek delay for delay's sake; he seeks lawful process. The Governor and Attorney General are poised to execute him pursuant to an unconstitutional procedure. The balance of equities, the rule of law, and the preservation of life all compel a stay.

The Fourteenth Amendment protects a person's liberty interest not only in life itself, but also in the fair and lawful procedures by which the State may take it. See *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980) ("The liberty interest protected by the Fourteenth Amendment encompasses a defendant's right to have the State follow its own laws in imposing punishment."). A procedure rooted in a state rule that directly conflicts with a state statute—here, the Governor's assumption of the judicial function of setting execution dates—is fundamentally unfair and contrary to due process. See also *Ford v. Wainwright*, 477 U.S. 399 (1986) (due process violated where state failed to adhere to constitutionally required procedures in capital cases).

To be clear, this is not a case where a minor procedural irregularity is being recast as a constitutional claim. The Eleventh Circuit has held that "not every violation by a state agency of its own rules rises to the level of a due process infringement." Smith v. Georgia, 684 F.2d 729, 732 n.6 (11th Cir. 1982). But the principle in Smith does not apply here. This is not an agency oversight—it is the transfer of an entire judicial function to the executive branch, contrary to express statutory command. Such a reassignment is not merely a procedural misstep; it alters the fundamental structure of government and the fairness of the process by which the State takes life. When the State violates the separation of powers that undergirds its own criminal procedures, it commits a due process violation of constitutional dimension, not a mere technicality.

The core concept of the rule of law requires that even the State itself obey the law. When a State disregards its own statutory structure and constitutional limits, it forfeits the legitimacy of its acts and the procedural defenses meant to shield them. This Court's intervention is therefore not only permitted—it is required to preserve the integrity of due process and to prevent an unlawful deprivation of life.

---

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Grant a stay of execution pending appeal;
2. Set an expedited briefing schedule; and
3. Grant such further relief as may be just and proper.

---

Respectfully submitted,

*Anthony Boyd*

Anthony Boyd, Pro Se
AIS # Z-578
William C. Holman Correctional Facility
866 Ross Road
Atmore, AL 36502


Declaration under 28 U.S.C. § 1746

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13 day of October, 2025.

*Anthony Boyd*

Anthony Boyd, AIS # Z-578


Certificate of Service

I certify that on __10/13__, 2025, I served a true and correct copy of the foregoing Appellant's Emergency Motion for Stay of Execution Pending Appeal by placing it in the United States mail, first-class postage prepaid, addressed to the following:

Office of the Governor
State Capitol
600 Dexter Avenue
Montgomery, AL 36130

Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130

Clerk of Court
United States District Court for the Middle District of Alabama
One Church Street
Montgomery, AL 36104

Clerk of Court
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

---

Anthony Boyd, Pro Se
AIS # Z-578

Anthony Boyd Z-578
Holman L-49
Holman 3700
Atmore, AL 36502

Clerk of Court
U.S. District Court for Middle District
One Church Street
Montgomery, AL 36104









100% Recycled fiber
80% Post-Consumer

HOLMAN UNIT L-49
(256) 499-1399
THE UPS STORE #3330
1414 GOLDEN SPRINGS RD
ANNISTON  AL 36207-6924

0.4 LBS LTR
SHP WT: LTR
DATE: 13 OCT 2025

SHIP  U.S DISTRICT COURT
TO:   CLERK OF COURT
      1 CHURCH ST

      MONTGOMERY    AL 36104-4018

AL 360 9-02

UPS NEXT DAY AIR                        1
TRACKING #: 1Z 365 R2E 01 7355 5861

BILLING: P/P

REF #1: DS

MMWCY563FJQX1 ISH 13.00C ZZD230 EP 37.5V 09/2025

Extremely Urgent

This envelope is for use with the following services:
UPS Next Day Air®
UPS Worldwide Express™
UPS 2nd Day Air®

Apply shipping documents on this side.

Do not use this envelope for:
UPS Ground®
UPS Standard®
UPS 3 Day Select®
UPS Worldwide Expedited®

Visit theupsstore.com to learn more about our Print & Business Services.

Visit theupsstore.com to find a location

Domestic Shipments
• To qualify for the Letter rate, UPS Express Envelopes...

International Shipments
• The UPS Express Envelope may be used...
• To qualify for the Letter rate, the UPS Express Envelopes weighing more...
ups.com/importexport to verify if your...

Note: Express Envelopes are not recommended for shipments containing sensitive personal information or breakable items, or cash equivalent.

CLEARED

Serving you for more than 100 years
United Parcel Service.

0188025D709 08/21 United Parcel Service